# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TECHNICAL SECURITY INTEGRATION, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **PHILADELPHIA INDEMNITY INSURANCE COMPANY**, <br><br> Defendant. | Case No. 3:14-cv-1895-SB <br><br> **OPINION AND ORDER** |

Jonathan M. Radmacher, MCEWEN GISVOLD LLP, 1100 SW Sixth Avenue, Suite 1600, Portland, OR 97204. Of Attorneys for Plaintiff.

Guy Keating, SCHULTE, ANDERSON, DOWNES ARONSON & BITTNER, P.C., 811 SW Naito Parkway, Suite 500, Portland, Oregon 97204, and Thomas H. Nienow, NELSON, HALEY & ABBOTT LLP, 100 Smith Ranch Road, Suite 350, San Rafael, California, 94903. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

    United States Magistrate Judge Stacie F. Beckerman issued Findings and

Recommendation in this case on January 10, 2019. ECF 70. Judge Beckerman recommended that

the Court (1) grant Plaintiff's motion for partial summary judgment, to the extent it argues that Defendant breached its duty to defend Plaintiff against Tharp's second and fifth counterclaims for defamation; and (2) deny Defendant's motion for summary judgment.

## STANDARDS

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

Defendant timely filed an objection (ECF 73), to which Plaintiff responded. ECF 74. Defendant objects to the portion of Judge Beckerman's recommendation finding that Swankosky's defamatory statements did not clearly arise out of Tharp's employment.

**BACKGROUND**

Judge Beckerman's Findings and Recommendation comprehensively details the factual background in this case. This dispute stems from Defendant's refusal to defend and indemnify Plaintiff for defamatory statements made by Plaintiff's employee Craig Swankosky, regarding a former employee, Tharp. On November 20, 2012, Plaintiff terminated the employment of Corey Tharp, and both Tharp and Plaintiff signed a severance agreement that included non-compete and non-disparagement clauses. Within a month of Tharp's termination, rumors started that Plaintiff was going out of business—rumors that Swankosky imputed to Tharp. Tharp began working for S&S, one of Plaintiff's competitors, on January 7, 2013. In early January 2013, two of Plaintiff's customers decided without prior notice not to renew their contracts with Plaintiff, which Plaintiff believed was due to interference by Tharp and S&S. Tharp began working on quotes for contracts with several of Plaintiff's customers. At a trade show in February 2013, Swankosky made defamatory statements about Tharp to employees of one of the customers who failed to renew its contract with Plaintiff. Also at that same trade show, Swankosky made defamatory statements about Tharp to an individual in their industry.[1]

Plaintiff sued Tharp for breach of contract and intentional interference with contractual advantage. Tharp counterclaimed for, among other things, defamation. Tharp's second and fifth counterclaims for defamation alleged that:

> On or about February 25, 2013, Mr. Swankosky published false statements to [Plaintiff's former clients] that Mr. Tharp was let go [by Plaintiff] for time management issues, project management issues, and for falsifying time sheets. Mr. Swankosky also stated that Mr. Tharp was being investigated by the Florence Police Department for grand theft, and would probably do jail time. Mr. Swankosky further stated that Mr. Tharp stole equipment from

---

[1] The customers who terminated their contracts with Plaintiff eventually signed contracts with S&S, Tharp's new employer.

> [Plaintiff's] office including a handful of cameras and a small digital recording system. Mr. Swankosky described how Mr. Tharp removed cameras from boxes ad replaced them with cans of soup, then left the boxes on the shelf. Mr. Swankosky stated, 'I know he did it and he's being investigated.'
>
> On or about February 25, 2013, Mr. Swankosky published false statements to Mr. Katnic [an individual in the industry], telling Mr. Katnic to watch out for Corey Tharp, because he (Mr. Tharp) was about to be in some very big trouble. Mr. Swankosky warned Mr. Katnic to stay clear of Mr. Tharp because Mr. Tharp had stolen some equipment, was being investigated for theft, and he would never work in the state again.

ECF 54-8 at 7-9. Plaintiff timely tendered to defendant the defense of Tharp's counterclaims. Defendant refused, however, to defend or indemnify Plaintiff in the Tharp lawsuit.

Plaintiff's insurance policy with Defendant includes defamation within the definition of "personal and advertising injury" covered by the policy. Plaintiff's policy, however, also provides:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;
    (b) Termination of that person's employment; or
    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person. . . .

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b), or (c) above occurs before employment, during employment or after employment of that person.

ECF 53-1 at 4.

## DISCUSSION

The parties agree that Washington law applies in interpreting the insurance policy. No Washington court has interpreted an employment-related practices exclusion in an insurance

PAGE 4 – OPINION AND ORDER

policy. Judge Beckerman conducted a thorough survey of the law on employment-related practices exclusions in the Ninth Circuit (interpreting California law), Florida, Texas, Louisiana, South Carolina, New Hampshire, and Iowa. Judge Beckerman concluded that the survey of out-of-state law suggested that courts: (1) apply a context-based evaluation to determine whether an employment-related practices exclusion bars coverage of a former employee's defamation claim; and (2) draw a distinction between employment-related defamation allegations and competition- or business-related defamation allegations. The Court finds Judge Beckerman's survey, analysis, and synthesis of the law to be persuasive and agrees that Judge Beckerman formulated the correct test.

In *HS Services, Inc. v. Nationwide Mutual Insurance Co.*, the only published Ninth Circuit opinion to address this issue, the Ninth Circuit held that "to 'arise out of' a termination of employment, the defamatory remark at issue must have been a part of or directly and proximately resulted from the termination." 109 F.3d 642, 647 (9th Cir. 1997). Although *HS Services* involved California law, the facts of that case are nearly identical to the facts here and compel a similar conclusion.

In *HS Services*, the defamatory remarks were directed at a former employee, but were caused by that ex-employee's own comments and actions as a competitor in the marketplace. "The remarks related directly to competition between [the employer and the former employee] in the marketplace and the latter's attempt to protect itself against a remark made by [the former employee], not as an ex-employee, but as a present competitor; that was their context."
*Id.* at 646. "Thus, the chain of causation between the termination and the remarks was broken."
*Id.* at 647. As in *HS Services*, the defamatory remarks at issue in the pending case were made in response to the ex-employee's competitive forays into the marketplace in an apparent attempt to

protect Plaintiff from Tharp's competition with potential customers or clients whose business he was soliciting. Although some of the defamatory statements involved allegations of Tharp's misconduct during the time period he worked for Plaintiff, like in *HS Services*, the statements likely never would have been made had Tharp not been communicating with Plaintiff's former customers in an attempt to solicit business. Some of Mr. Swankosky's allegedly defamatory statements, including his statement that the Florence Police Department was investigating Tharp, bear little, if any, connection to Tharp's earlier employment with Plaintiff.

Defendant also argues that Washington courts' interpretation of the phrase "arising out of" in the insurance context mandates a conclusion that the defamatory statements are excluded from the policy. Washington courts have defined "arising out of" as "'originating from[,'] 'having its origin in[,'] growing out of[,'] or 'flowing from[.']" *Toll Bridge Auth. v. Aetna Ins. Co.*, 54 Wash. App. 400, 404-05 (1989) (quoting *Avemco Ins. Co. v. Mock*, 44 Wash. App. 327, 329 (1986)). In *American Best Food, Inc. v. Alea London, Ltd.*, however, the Washington Supreme Court explained that "arising out of" exclusions are not always so broadly construed in instances where there were "intervening, allegedly negligent acts by the insured." 168 Wash. 2d 398, 410 (2010) (en banc). The Washington Supreme Court distinguished the cases interpreting "arising out of" that Defendant relies on from cases where intervening acts broke the chain of causation. *Id.* at 409-411.

In *American Best*, the Washington Supreme Court concluded that an insurance policy that excluded coverage for injuries "arising out of" assault and battery did not exclude coverage for the plaintiff's injuries that were caused by the insured's negligence in responding to an assault and battery committed by another bar patron, even though the patron's assault and battery was the "but-for" cause of the injuries. *Id.* at 411. Thus, it is reasonable to believe that the

Washington Supreme Court, if faced with a situation where, as here, intervening circumstances broke the chain of causation, would not construe "arising out of" so literally or narrowly. The chain of causation was broken by Tharp's actions and statements as a competitor in the marketplace, and it is these actions and statements that caused the defamation, even though his employment with Plaintiff was the "but-for" cause of the defamation. Defendant's arguments that Washington law would interpret "arising out of" so literally and narrowly were fairly considered and soundly rejected by Magistrate Judge Beckerman.

## CONCLUSION

The Court ADOPTS Judge Beckerman's Findings and Recommendation (ECF 70). Plaintiff's Motion for partial summary judgment (ECF 60) is GRANTED, and Defendant's motion for summary judgment (ECF 50) is DENIED.

**IT IS SO ORDERED.**

DATED this 18th day of March, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge